**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

CASE NO. _____

VALLEY NATIONAL BANK d/b/a AGILE
PREMIUM FINANCE,

    Plaintiff,

v.

CAPTIVEONE SERVICES, LLC, 4 BEAUTY
AESTHETIC INSTITUTE INC., BRYSTE
HOLDINGS LLC, CONSTANTINO MENDIETA,
and WAYNE C. JENKINS,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Valley National Bank d/b/a Agile Premium Finance ("*Agile*"), by and through its undersigned counsel, Duane Morris LLP, brings this suit against CaptiveOne Services, LLC ("*CaptiveOne*"), 4 Beauty Aesthetic Institute Inc. ("*4 Beauty*"), Bryste Holdings LLC ("*Bryste*"), Constantino Mendieta ("*Mendieta*") and Wayne Jenkins ("*Jenkins*") (collectively, "*Defendants*"), and alleges as follows:

### INTRODUCTION

1. This multi-count action stems from a Commercial Insurance Premium Finance Agreement and Disclosure Statement ("*Premium Finance Agreement*" or "*PFA*") between 4 Beauty as Borrower (Insured), CaptiveOne as Agency, Jenkins as Guarantor, and Agile as Lender. Defendants' egregious failure to repay funds borrowed under the PFA is a clear violation of their contractual obligations. Defendants have not only defaulted on their repayment, but have also

provided no explanation regarding the use of the funds, raising serious concerns about their intentions and fiduciary duties.

2. Agile entered into the PFA under the reasonable expectation that Defendants would act in good faith and uphold their contractual commitments. Instead, Defendants have engaged in fraudulent behavior, deceiving Agile, and failing to disclose critical information regarding their financial dealings.

3. Based on Defendants' inequitable and deceitful conduct, Agile now seeks redress from this Court and full compensation for the losses and damages it has sustained.

## PARTIES, JURISDICTION, AND VENUE

4. This is a civil action seeking damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

5. CaptiveOne is a Delaware limited liability company with its principal place of business at 1035 State Road 7, Suite 215, Wellington, Florida 33414. CaptiveOne's sole manager and member is Jenkins, who is domiciled in Palm Beach County, Florida.

6. 4 Beauty is a Florida corporation with its principal place of business at 2310 South Dixie Highway, Coconut Grove, Florida 33133.

7. Bryste is a Florida limited liability company with its principal place of business at 3101 Fairlane Farms Road, Suite 2, Wellington, Florida 33414. Bryste's sole manager and member is Jenkins, who is domiciled in Palm Beach County, Florida.

8. Mendieta is an individual who is domiciled in Miami-Dade County, Florida and is *sui juris*.

9. Jenkins is an individual who is domiciled in Palm Beach County, Florida and is *sui juris*.

10. Valley National Bank ("*Valley*") is a New Jersey corporation with its principal place of business at 70 Speedwell Avenue, Morristown, New Jersey 07960. Agile is a division of Valley that engages in premium financing.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332 as Valley and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12. The Court has personal jurisdiction over the Defendants as the Defendants are all citizens of the State of Florida for jurisdictional purposes and, additionally, as to CaptiveOne, pursuant to Fla. Stat. § 48.193.

13. Venue is proper in the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. §1391(b)(1) because all Defendants reside in this District and a substantial part of the events or omissions giving rise to Valley's claims occurred in this District.

14. All conditions precedent to the filing of this action have been performed, have occurred, or have otherwise been waived.

## FACTUAL ALLEGATIONS

*Relationship of the Parties*

15. Jenkins is the principal and beneficial owner of CaptiveOne.

16. CaptiveOne offers "captive"[1] assessment, formation, and management services.

17. In the ordinary course of its business, CaptiveOne enters into contracts to obtain risk management insurance. The premiums under such insurance policies often cost hundreds of

---

[1] According to CaptiveOne's website, a "captive" is an insurance company that issues coverage for specific risks to a business for which coverage from commercial insurance carriers may be unavailable or unaffordable. Instead of paying premiums to a commercial insurance carrier, you pay premiums to your captive. *See* https://www.captiveone.com/, last accessed October 31, 2024.

thousands of dollars and necessitate short-term financing for payment. Accordingly, in conjunction with its insurance contract, CaptiveOne enters into agreements with companies that offer financing for premium payments while awaiting payment from its clients.

18. Agile, a division of Valley, provides such premium financing, allowing policyholders to pay their premiums under their insurance policies over time. In exchange, Agile receives interest and other finance charges.

19. CaptiveOne often serves as an intermediary agent under these PFAs. In its capacity as agent under the PFA, CaptiveOne, among other things, introduces the insured to the PFA and directly receives advances under the PFAs to coordinate payment with the insurance company and establish insurance for the insured.

20. CaptiveOne served in such an intermediary agent capacity under the 4 Beauty PFA (defined below).

21. In June of 2023, Defendants engaged Agile to provide insurance premium financing, which Agile provided to Defendants in the amount of $1,920,954.10.

*The Insurance Premium Financing Agreement*

22. On June 12, 2023, 4 Beauty and CaptiveOne executed a PFA in the amount of $1,920,954.10 (the "***4 Beauty PFA***"). A true and correct copy of the 4 Beauty PFA is attached hereto as **Exhibit A**.

23. In connection with the 4 Beauty PFA, 4 Beauty executed a Captive Financing Agreement (the "***4 Beauty Captive Agreement***") with Agile on June 1, 2023, which granted Agile the right to request termination of the financed insured policies in the event of a default and to notify 4 Beauty of the default. A true and correct copy of the 4 Beauty Captive Agreement is attached hereto as **Exhibit B**.

24. Also in connection with the 4 Beauty PFA, Jenkins and Bryste executed an Agent Guaranty Letter (the "**4 Beauty Guaranty Agreement**") on June 22, 2023, wherein Jenkins and Bryste guaranteed the obligations and liabilities of 4 Beauty. A true and correct copy of the 4 Beauty Guaranty Agreement is attached hereto as **Exhibit C**.

25. The relationship of the parties to the 4 Beauty PFA, 4 Beauty Captive Agreement, and 4 Beauty Guaranty Agreement is as follows: ***Lender*** (Agile); ***Borrower*** (4 Beauty); ***Borrower's Agent*** (CaptiveOne); ***Insurance Broker*** (CaptiveOne); ***Managing General Agency*** (4B Risk Services); ***Guarantor*** (Jenkins).

26. Mendieta, as owner of 4 Beauty, authorized Miguel Vanegas to electronically sign the 4 Beauty PFA as "Insured" on 4 Beauty's behalf. An E-Signature Document History is attached as **Exhibit D**.

27. The 4 Beauty PFA provides, among other terms, that Agile shall advance funds to pay the insurance policies listed in the 4 Beauty PFA in exchange for 4 Beauty's promise to repay the amount so advanced, plus interest and other finance charges.

28. Agile advanced all funds under the 4 Beauty PFA to 4 Beauty and CaptiveOne for forwarding to 4 Beauty's insurance company.

29. The 4 Beauty PFA includes, among other things, a warranty from CaptiveOne, as the agent, that any amount received from Agile will be forwarded to the insurance company providing the policy.

30. Further, the 4 Beauty PFA includes a warranty from CaptiveOne, as the agent, that (i) the agreement is valid, (ii) all signatures to the agreement are genuine, and (iii) all policies listed are correctly described and in full force and effect.

31. CaptiveOne, as agent, also agreed to hold harmless and indemnify Agile "against any losses, costs, fees, inclusive but not limited to Attorney's Fees, Court Costs, Collection Fees, and other reasonable costs incurred" by Agile as a result of a violation of any representation and warranty under the PFA or from the agent's error or omission.

32. Importantly, under the terms of the 4 Beauty PFA, Agile is authorized to: (a) cancel the "Policies listed in the Schedule of Policies . . . for non-payment;" (b) "demand [the PFA] be paid in full . . . ;" and (c) "take any action, not prohibited by law, to collect payment of any unpaid amounts due." **Exhibit A**, ¶8.

*The Insurance Premium Financing Agreement Defaults*

33. Defendants' initial payment under the 4 Beauty PFA was due on June 30, 2023, with all subsequent payments due on the thirtieth day of each following month. Defendants, however, failed to make the requisite payments as agreed.

34. On or about September 6, 2023, Agile notified 4 Beauty, CaptiveOne, and Jenkins of its intent to request cancellation of the financed insurance policies due to nonpayment (the "*4 Beauty Cancellation Notices*"). True and correct copies of the 4 Beauty Cancellation Notices are attached hereto as **Composite Exhibit E**.

35. In addition, by letters dated October 27 and November 10, 2023, Agile notified 4 Beauty, CaptiveOne, and Jenkins of the default under the 4 Beauty PFA, and its intent to accelerate all amounts owing under the 4 Beauty PFA (the "*4 Beauty Demand Letters*"). True and correct copies of the 4 Beauty Demand Letters are attached hereto as **Composite Exhibit F**.

36. In the 4 Beauty Demand Letters, Agile declared that the amount due and owing as of October 2023 as $1,859,265.90 inclusive of finance charges, but not including late charges and costs of collection.

37. To date, Agile has not received any payments from the Defendants under the terms of the 4 Beauty PFA.

*Misuse of the Financed Funds*

38. Agile entered into the 4 Beauty PFA relying on Defendants' representations that the funds Agile was advancing would be used to pay 4 Beauty's insurance policies.

39. Specifically, Agile relied on the representations of Jenkins, on behalf of CapitveOne and Bryste, and as agent for 4 Beauty, that the funds advanced by Agile for 4 Beauty's insurance policies would be paid back according to the terms set forth in the PFA.

40. However, upon information and belief, Defendants failed to fulfill their obligation to transfer funds to 4 Beauty's insurance company as stipulated in the 4 Beauty PFA.

41. Instead, upon information and belief, Defendants misappropriated the money intended for 4 Beauty's insurance premiums.

42. Plaintiff was forced to retain counsel to institute these legal proceedings and agreed to pay its counsel reasonable hourly fees for their work.

## COUNT I
## BREACH OF CONTRACT
### Against 4 Beauty, CaptiveOne, and Jenkins

43. Agile re-alleges and incorporates paragraphs 1 through 42 as if fully set forth herein.

44. On or about June 12, 2023, Agile and Defendants entered into a valid and enforceable contract, the 4 Beauty PFA, with Defendants agreeing to borrow from Agile $1,920,954.10, in exchange for 4 Beauty's promise to repay Agile with interest plus financing charges.

45. 4 Beauty, CaptiveOne, and Jenkins represented to Agile that the financed funds were to be transferred to 4 Beauty's insurance companies in a timely manner to ensure proper coverage for 4 Beauty.

46. The first payment was due on June 30, 2023, with subsequent payments made on the thirtieth of each month.

47. Despite receiving the funds, 4 Beauty, CaptiveOne and Jenkins failed to transfer the funds to 4 Beauty's insurance carrier, directly contradicting their representations and the terms of the 4 Beauty PFA.

48. 4 Beauty, CaptiveOne, and Jenkins also failed to make any of the required payments to Agile in accordance with the terms of the 4 Beauty PFA.

49. Despite Agile's notices of default and request for payment, 4 Beauty, CaptiveOne, and Jenkins failed to remedy this breach and provide payment to Agile.

50. As of October 2023, the total amount due and owing to Agile under the 4 Beauty PFA is $1,859,265.90, inclusive of finance charges, but not including late charges and costs of collection.

51. Agile has been damaged and continues to suffer damages as a direct and proximate result of 4 Beauty, CaptiveOne, and Jenkins' breach of the 4 Beauty PFA in an amount to be determined at trial.

## COUNT II
## BREACH OF CONTRACT
### Against Jenkins and Bryste

52. Agile re-alleges and incorporates paragraphs 1 through 42 as if fully set forth herein.

53. Following the execution of the 4 Beauty PFA, on June 22, 2023, Jenkins and Bryste executed the 4 Beauty Guaranty Agreement wherein Jenkins and Bryste guaranteed the obligations and liabilities of 4 Beauty under the 4 Beauty PFA.

54. Pursuant to 4 Beauty Guaranty Agreement, Jenkins and Bryste agreed to pay all balances for all accounts financed with Agile in the event 4 Beauty defaulted under the terms of the 4 Beauty PFA.

55. 4 Beauty failed to make any payments to Agile as required under the terms of the 4 Beauty PFA.

56. Jenkins and Bryste failed to fulfill their contractual obligations under the 4 Beauty Guaranty Agreement by not repaying the amount financed by Agile under the 4 Beauty PFA, despite repeated demands by Agile.

57. As a direct and proximate result of Jenkins' and Bryste's failure to pay, Agile has suffered financial harm and is entitled to recover the outstanding balance owed under the 4 Beauty PFA. Despite Agile's notices of default and request for payment, Jenkins and Bryste failed to remedy this breach.

58. As of October 2023, the total amount due and owing is $1,859,265.90, inclusive of finance charges, but not including late charges and costs of collection.

59. Agile has been damaged and continues to suffer damages as a direct and proximate result of Jenkins' and Bryste's breach of the 4 Beauty Guaranty Agreement in an amount to be determined at trial.

**DUANE MORRIS LLP**
201 South Biscayne Boulevard · Suite 3400 · Miami · Florida 33131 ·Tel: 305.960.2200

## COUNT III
## UNJUST ENRICHMENT
### Against All Defendants

60. Agile re-alleges and incorporates paragraphs 3 through 18, 21, and 41-42 as if fully set forth herein.

61. Agile provided financing to Defendants totaling $1,920,954.10 under circumstances where it and Defendants understood that the financing was to serve as an advance to be paid to 4 Beauty's insurance companies.

62. Defendants wrongfully took the funds for their own benefit and to the detriment of Agile.

63. As a direct result of Defendants' actions, Defendants have been unjustly enriched at the expense of Agile. Defendants have retained the benefits derived from the funds without a legal justification or entitlement.

64. Based on their inequitable conduct, Defendants should not be permitted to retain the financed funds derived from the 4 Beauty PFA or any other benefit they derived from abusing their relationship with Agile.

65. Agile has no adequate remedy at law related to Defendants' unjust enrichment available to it.

66. Agile has been damaged and continues to suffer damages as a direct and proximate result of Defendants' actions and it would be inequitable for Defendants to retain the benefits bestowed upon them by Agile without paying the fail value for the same.

## COUNT IV
## FRAUD
### Against CaptiveOne and Jenkins

67. Agile re-alleges and incorporates paragraphs 1 through 42 as if fully set forth herein.

68. CaptiveOne and Jenkins made material misrepresentations to Agile. Specifically, to induce Agile into providing insurance premium financing to 4 Beauty, CaptiveOne and Jenkins represented that they, as agents for 4 Beauty, would use the funds provided by Agile to pay 4 Beauty's insurance policies listed in the 4 Beauty PFA. However, the funds were never transferred to 4 Beauty's insurance companies or used for its intended purpose.

69. These representations made by CaptiveOne and Jenkins were false when made and were known to be false when made.

70. CaptiveOne and Jenkins made the false statements to Agile for the express purpose of defrauding Agile and inducing Agile to agree to finance 4 Beauty's insurance policies so that Agile would transmit the funds under the 4 Beauty PFA to CaptiveOne and Jenkins, while they had no intention of utilizing the funds for the agreed purpose and instead sought to convert the funds in excess of $1,920,954.10 for their own use. The fact that CaptiveOne and Jenkins did not even transfer the funds to 4 Beauty's insurance companies demonstrates that their intent to use the funds goes beyond what was represented to Plaintiff.

71. Had Agile known the truth regarding CaptiveOne and Jenkins' fraudulent intent and false representations, it never would have agreed to finance 4 Beauty's insurance policies or enter into the 4 Beauty PFA.

72. CaptiveOne and Jenkins made the false representations with the sole intention of defrauding Agile for their own personal economic benefit.

73. Agile reasonably and justifiably relied upon CaptiveOne and Jenkins' representations.

74. As a direct and proximate result of the fraud by CaptiveOne and Jenkins and Agile's reasonable reliance upon CaptiveOne and Jenkins's false representations, Agile has been damaged and continues to suffer damages in an amount to be determined at trial.

## COUNT V
## CIVIL CONSPIRACY
### Against All Defendants

75. Agile re-alleges and incorporates paragraphs 1 through 42 as if fully set forth herein.

76. Jenkins created Captive One and Bryste with the specific intent to form fraudulent business operations designed to mislead entities, such as Plaintiff, and obtain funds under false pretenses.

77. Jenkins, through CaptiveOne and Bryste, conspired with 4 Beauty and Mendieta to form a partnership. This collaboration was not a legitimate business venture but rather a coordinated effort to facilitate the deceptive scheme.

78. On June 13, 2023, Defendants knowingly and willfully conspired and agreed among themselves to defraud Agile through several misrepresentations with regard to the 4 Beauty PFA.

79. Defendants' primary objective was to represent to Plaintiff that the financed funds were to be used for 4 Beauty's insurance when, in reality, Defendants' conspired amongst themselves to obtain the funds and utilize the money for alternative purposes.

80. In reasonable reliance upon such false representations, Agile financed $1,920,954.10 to 4 Beauty for the intended purpose of paying 4 Beauty's premium insurance policy. Instead, Defendants used the funds for their own personal use.

81. Defendants cooperated and did these acts pursuant to, and in furtherance of their conspiracy to defraud Agile of money through the purported loan. Indeed, Defendants never intended for Plaintiff's funds to be used for 4 Beauty's insurance policies.

82. As a direct and proximate result of Defendants' wrongful acts alleged above, Agile has been damaged in an amount to be determined at trial.

## COUNT VI
## AIDING AND ABETTING FRAUD
### Against All Defendants

83. Agile re-alleges and incorporates paragraphs 1 through 42 as if fully set forth herein.

84. As alleged herein, Defendants committed a massive fraud on Agile by misrepresenting the use of the financed funds and misusing the funds.

85. Specifically, Jenkins created CaptiveOne and Bryste with the intent to facilitate fraudulent business activities, knowing that these entities would be used to mislead and wrongfully obtain funds.

86. Jenkins, through CaptiveOne and Bryste, partnered with 4 Beauty and Mendieta, providing assistance and support in the formation of a partnership that was designed to perpetuate a fraudulent scheme. Each defendant, acting with full knowledge of the fraudulent purpose, assisted in the creation of this partnership to further the deceptive scheme.

87. The partnership sought financing from Plaintiff. Jenkins knowingly and intentionally aided and abetted the others in this effort, helping to mislead Plaintiff and present the fraudulent entities CaptiveOne and Bryste as legitimate, in order to obtain financing under false pretenses. 4 Beauty and Mendieta, in turn, assisted Jenkins in furthering the fraudulent scheme.

88. Jenkins, together with 4 Beauty and Mendieta, acted in concert to facilitate the fraudulent scheme.

89. Defendants knowingly assisted in the presentation of false and misleading information to Plaintiff, enabling the unlawful acquisition of funds.

90. Defendants had actual knowledge of, or remained willfully blind to, the fraud that led to the execution of the 4 Beauty PFA.

91. Agile relied upon Defendants' fraudulent statements, leading to the execution of the 4 Beauty PFA and the premium financing.

92. Defendants knew that the funds were not to be used for 4 Beauty's insurance policies and that Defendants would not return the financed amount.

93. By making material misstatements and false representations, Defendants misled Agile into entering the 4 Beauty PFA.

94. As a direct and proximate result of Defendants' wrongdoing, Agile has been damaged and continues to suffer damages in an amount to be determined at trial.

**COUNT VII**
**DECLARATORY JUDGMENT**
**Against CaptiveOne and Jenkins**

95. Agile re-alleges and incorporates paragraphs 1 through 42 as if fully set forth herein.

96. This count is for a declaration that Jenkins is the alter ego of CaptiveOne, and therefore, CaptiveOne's corporate veil is subject to piercing, making CaptiveOne liable and accountable for its alter ego's improper, fraudulent, and unlawful conduct described herein.

97. At all material times hereto, CaptiveOne has been nothing more than a mere conduit for Jenkins' fraudulent schemes to defraud Agile, as described in detail herein.

98. Jenkins is the owner of CaptiveOne.

99. Jenkins created and incorporated CaptiveOne for the improper purpose of shielding Jenkins from litigation, evading obligations and defrauding financiers, including Agile, and avoiding the appearance of impropriety.

100. At all material times hereto, CaptiveOne functioned and operated for the presumably hidden purpose of lending Jenkins the credibility necessary for obtaining large sums of money for undisclosed purposes. In other words, CaptiveOne were used fraudulent and/or for the improper purpose of misleading financiers into "loaning" Jenkins money.

101. Jenkins dominated and controlled CaptiveOne to such an extent that CaptiveOne has no separate existence or will of its own. Indeed, CaptiveOne has no independent existence and Jenkins is in fact the alter ego of CaptiveOne.

102. Jenkins abused the limited liability form of CaptiveOne and exploited it for the improper purpose of defrauding Agile. The misconduct is readily apparent through the scheme established and perpetuated by Jenkins to swindle Agile out of the funds, and thereby reap the economic benefits of the arrangement of the 4 Beauty PFA without honoring the corresponding obligations.

103. CaptiveOne was used by Jenkins to perpetrate fraud upon, including, but not limited to, Agile.

104. Agile has been damaged as a direct and proximate result of Jenkins' improper and fraudulent use of the limited liability form of CaptiveOne and Jenkins received economic benefit from the same.

### **NOTICE OF ALLEGATIONS OF PUNITIVE DAMAGES**

105. Agile re-alleges and incorporates paragraphs 1 through 104 as if fully set forth herein.

106. Defendants are liable for punitive damages pursuant to Florida Statute § 768.62, Florida Statutes, for their willful, reckless disregard of the rights of others, to unjustly and unlawfully enrich themselves, at the expense of Agile.

107. Defendants' unlawful, misleading, and deceptive business practices for the purpose of economic gain at the expense of others is reckless conduct that constitutes malice and fraud and evinces a conscious or reckless indifference to the rights and safety of others, including Agile and its clientele, which warrants the imposition of punitive damages against Defendants.

108. For the sake of example and by way of punishing Defendants, Agile seeks the imposition of punitive damages according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that the Court enter a judgment in their favor and against Defendants and, specifically:

A. Declare Jenkins is the alter ego of CaptiveOne;

B. Award compensatory damages in an amount to be determined at trial;

C. Award punitive damages in an amount to be determined at trial;

D. Award fees, costs, and expenses incurred in the prosecution of the present action, including reasonable attorney's fees;

E. Award prejudgment interest on all damages; and

F. Grant any other relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Agile demands a jury trial of all issues so triable.

Dated this 25th day of November, 2024.

                                                */s/ Julian A. Jackson-Fannin*
                                                Julian A. Jackson-Fannin, Esq.
                                                Florida Bar No. 93220
                                                Anoosheh A. Shaikh, Esq.
                                                Florida Bar No. 1039830
                                                DUANE MORRIS LLP
                                                201 South Biscayne Boulevard, Suite 3400
                                                Miami, FL 33131-4325
                                                Telephone: +1 305 960 2200
                                                JJFannin@duanemorris.com
                                                AShaikh@duanemorris.com
                                                PNMendoza@duanemorris.com
                                                JMagarin@duanemorris.com