UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-CV-81491-DSL

VALLEY NATIONAL BANK,
d/b/a AGILE PREMIUM FINANCE,

        Plaintiff,

vs.

4 BEAUTY AESTHETIC INSTITUTE, INC.,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Valley National Bank d/b/a Agile Premium Finance ("Agile") says it is entitled to judgment as a matter of law for breach of contract (Count I of the Complaint) because 4 Beauty Aesthetic Institute ("4 Beauty") has not repaid a premium finance loan. ECF No. 100. 4 Beauty says it is entitled to judgment as a matter of law because no enforceable financing contract exists. ECF No. 102.

I have reviewed: (1) Agile's Motion, 4 Beauty's Response, and Agile's Reply, ECF Nos. 100, 109, 129, (2) 4 Beauty's Motion, Agile's Response, and 4 Beauty's Reply, ECF Nos. 102, 111, 128, and (3) the joint statement of undisputed facts, ECF Nos. 135-1, 145. I have also, where appropriate, reviewed portions of the record, as permitted by Federal Rule of Civil Procedure 56(c)(3). In considering both cross motions, I consider all of the parties' arguments, without regard to whether they are asserted in an affirmative motion or in a response.

For the following reasons, it is RECOMMENDED that Agile's Motion for Summary Judgment be GRANTED and that 4 Beauty's Motion for Summary Judgment be DENIED.

## I.   SUMMARY JUDGMENT STANDARD

The legal standard on cross-motions for summary judgment does not differ from the standard applied when only one party files a summary judgment motion. *See Am. Bankers Ins. Grp. v. United States,* 408 F.3d 1328, 1331 (11th Cir. 2005). Summary judgment is proper only when, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157 (1970). "The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in [the non-movant's] favor." *United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1437 (11th Cir. 1991) (internal quotation marks and citations omitted).

> The moving party's burden on a motion for summary judgment "depend[s] on whether the legal issues ... are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993). "[F]or issues on which the movant would bear the burden of proof at trial, 'that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (emphasis in original) (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1437). "For

2

issues, however, on which the non-movant would bear the burden of proof at trial, 'the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility.'" *Id.* (emphasis in original) (quoting *Four Parcels*, 941 F.2d at 1437–38).

*Nunez v. Coloplast Corp.,* No. 19-CV-24000, 2020 WL 2561364, at *1 (S.D. Fla. May 20, 2020). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States,* 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson,* 477 U.S. at 247-48). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 996 (11th Cir. 1990).

## II.    UNDISPUTED FACTS

4 Beauty is a medical office. ECF No. 135-1 ¶3. It is owned by Dr. Constantino Mendieta. ¶4. [1] Dr. Mendieta has authority to enter into contracts for 4 Beauty. ¶5.

---

[1] Unless otherwise noted, citations to "¶" refer to paragraphs from the joint statement of undisputed facts. ECF Nos. 135-1, 145. 4 Beauty says that many of these facts are not material because "they relate to an unpled theory of liability not plead in the Agile's operative complaint." ECF No. 145 at 1. As discussed in the body of this Report

Since at least 2023, Miguel Vanegas has been a strategic advisor to 4 Beauty. ¶7. In 2023, Mr. Vanegas was authorized to communicate with Agile and with CaptiveOne Services LLC, ("CaptiveOne") or a person purporting to act on each of their behalf, regarding insurance premium financing for 4 Beauty. ¶9. Mr. Vanegas had no authority to sign contracts on behalf of 4 Beauty, including but not limited to, any premium finance agreements and captive financing agreements. ¶10.

In or about early 2019, 4 Beauty created or caused to be created a captive insurance company named 4 Beauty Risk Services. ¶11; ECF No. 97-1 at 80; ECF No. 97-2 at 130. In or about September 2022, 4 Beauty was listed as an insured on a Special Business Risk Protection policy from Series Captive Insurance Companies of American Casualty Reinsurance of Delaware, LLC, with policy number 10190-0518-BP-22. ¶12; ECF No. 96-1 at 423. The policy was issued on September 9, 2022. ECF No. 96-1 at 426.

At the same time, 4 Beauty obtained a Special Economic Loss Protection Policy from Series Captive Insurance Companies of American Casualty Reinsurance of Delaware, LLC, with policy number 10190-0518-EL-22. ¶14; ECF No. 96-1 at 445. The effective date was September 9, 2022. ECF No. 96-1 at 446.

4 Beauty decided to seek financing for the premiums of these policies. ¶¶13, 15. To that end, in 2023, Dr. Mendieta communicated with CaptiveOne, or persons purporting to act on its behalf, regarding insurance premium financing for 4 Beauty.

---

and Recommendation, Agile is properly arguing a theory of contract modification.

4

¶16. 4 Beauty authorized Wayne C. Jenkins and CaptiveOne, or persons purporting to act on each of their behalf, to procure insurance premium financing for 4 Beauty. ¶17.

As part of this process, Agile received a copy of the insurance policy issued by 4 Beauty Risk Services providing coverage to 4 Beauty in 2023, as well as invoices from CaptiveOne to 4 Beauty charging for the insurance premiums. ¶55.

In February 2023, 4 Beauty signed a Captive Financing Agreement with Agile (the "February CFA"). Among other terms, 4 Beauty agreed to execute a Premium Financing Agreement. ECF No. 97-3 at 160. Dr. Mendieta, 4 Beauty's owner and authorized representative, was in direct communication with Agile as early as March 2023. ¶54.

On April 25, 2023, a Commercial Insurance Premium Finance Agreement and Disclosure Statement was executed (the "April PFA"). ECF No. 97-3 at 166. It listed 4 Beauty as the "Borrower (Insured)," Agile as the lender, CaptiveOne as the Agent/Broker, and 4 Beauty Risk Services as the Insurance Company Managing General Agency. ¶18; ECF No. 97-3 at 166. Although it did not list a specific policy number, the first page of the April PFA said the effective date of the policy being financed was September 9, 2022, and that it was a "Gen Liab" policy. ECF No. 97-3 at 166.A schedule attached to the April PFA listed a "Risk Mgmt Program Fee" and had the same September 9, 2022, effective date.

The April PFA reflected that the amount financed was $1,920,954.10. *Id.* It called for 4 Beauty to make five monthly repayments in the amount of $411,072.86

5

beginning May 9, 2023. *Id*. It referenced "Quote #3350067.1." *Id*. Dr. Mendieta's name is on the line for "Signature of Insured." ECF No. 97-3 at 166.

As part of the April PFA, 4 Beauty represented and warranted, among other things, that (i) the financed policies were in full force and effect; (ii) the information provided in the agreement was true and accurate and not misleading; (iii) the down payment had been paid in full to the agent or broker; (iv) 4 Beauty had no indebtedness to the insurer issuing the policy; and (v) 4 Beauty was not insolvent. ¶19. The April PFA further defines an event of default as, among other things, (i) 4 Beauty's failure to pay an installment when due; (ii) 4 Beauty's failure to comply with any of the terms of the agreement; or (iii) the cancellation of any of the financed policies. ¶20.

> In the event of a default, Agile could
>
> demand agreement be paid in full regardless of whether unearned premium has been refunded. Agile [ ] may take any action, not prohibited by law, to collect payment of any unpaid amounts due. Insured agrees to pay all applicable cancellation charges, interest charges, collection costs, and expenses incurred by Agile [ ] as a result of or in connection with enforcing its rights under this Agreement

ECF No. 97-3 at 167.

At the time it signed the April PFA, 4 Beauty and Mendieta knew that 4 Beauty could not afford the monthly payments of $411,072.86. ¶22.

On May 2, 2023, Agile wire transferred $1,913,754.10 to CaptiveOne. ¶23.[2] That same day, May 2, 2023, Agile notified 4 Beauty's captive manager, CaptiveOne,

---

[2] At that time Agile was a division of Valley National Bank ("Valley") and conducting

in writing that it had disbursed $1,913,754.10 for 4 Beauty's insurance policy with 4 Beauty Risk Services. ¶56. On May 3, 2023, Agile texted 4 Beauty, "Hi Dr. Mendieta. My Agile Financing Team closed the captive start up financing this week." ECF No. 97-4 at 4; ¶57.

4 Beauty failed to make any of the installment payments required under the April PFA. ¶21. On May 26, 2023, Agile sent an email to 4 Beauty stating that 4 Beauty's account was past due for the May 9, 2023, payment "and the insurance policies are scheduled to cancel" on May 31, 2023, for nonpayment. ¶59.

By June 2023, 4 Beauty had obtained different insurance policies, so the loan was rewritten. ECF No. 109-2 at 2; ECF No. 96-1 at 60-61.

On June 12, 2023, 4 Beauty and Agile entered into a Captive Financing Agreement (the "June CFA") ¶32. The June CFA said Agile would finance 4 Beauty's new captive insurance company. ECF No. 1-7 at 2. The June CFA also said 4 Beauty would execute a Premium Financing Agreement, which was referenced as "Schedule A" to the June CFA. Dr. Mendieta signed the June CFA on behalf of 4 Beauty. ECF No. 1-7 at 4. Agile did not sign the June CFA. *Id*.

4 Beauty designated CaptiveOne, or persons purporting to act on its behalf, to be 4 Beauty's captive manager. ¶34. However, at the time of the June PFA and the

---

business under Valley's federal banking identification number. ¶43. Valley subsequently sold Agile to First Financial Bank pursuant to an asset purchase agreement, but Valley retained the loan at issue. ¶44.

7

June CFA, 4 Beauty knew that it could not afford the monthly payments of $183,160.17. ¶35.

As contemplated in the June CFA, on June 12, 2023, Dr. Mendieta, on behalf of 4 Beauty, executed a new Commercial Insurance Premium Finance Agreement and Disclosure Statement. ¶24; ECF No. 1-6 ("June PFA"). The June PFA referenced "Quote #3510579.1." ECF No. 1-6 at 2. The loan amount remained the same ($1,918,504.10), as did the down payment. *Id*. The loan was now repayable in 11 monthly installments of $183,160.17, with the first payment due on June 30, 2023. *Id*. The finance charges dropped from $134,410.20 to $93,807.77. *Id*.

The June PFA listed 4 Beauty Risk Services as the Insurance Company Managing General Agency. ¶26. There was no insurance policy number appearing on the June PFA, and the space that would have contained a policy number was blank. ¶27. The June PFA referenced a "Gen Liab" insurance policy with an effective date of May 1, 2023; the attached schedule referenced a "Risk Mgmt Program Fee" with an effective date of May 1, 2023. It contained the same representations, warranties, and default remedies as the April PFA. ¶¶28, 29, 30; ECF No. 1-6 at 3 ¶8.

The June PFA said, "This agreement does not go into effect until Agile Premium Finance accepts it in writing." ECF No. 1-6 at 3 ¶5; ECF No. 97-3 at 167 ¶5. No additional funds were disbursed in furtherance of the June PFA.

4 Beauty never made nor caused to be made any payments to Agile. ¶37. On July 3, 2023, Agile notified 4 Beauty that its $183,160.17 payment due June 30, 2023 was past due. ¶36. On October 27, 2023, Agile sent a demand letter to 4 Beauty

stating that 4 Beauty had defaulted on the June PFA and demanding payment in full of the aggregate amount due under the June PFA. ¶40. On November 10, 2023, Agile's legal counsel sent 4 Beauty a notice of default and demand for payment re-stating that Agile had declared the entire amount owing under the June PFA immediately due and payable to Agile. ¶41. On July 10, 2023, Agile sent 4 Beauty a Notice of Intent to Cancel. ECF No. 99-1 at 7.

On or about July 17, 2023, 4 Beauty confirmed receipt of Agile's notices of intent to cancel its insurance policies. ¶67. On July 24, 2023, Agile sent 4 Beauty a notice that an attempted payment to 4 Beauty's account was declined. ¶68. On July 27, 2023, Agile notified Dr. Mendieta that the payment from July 20, 2023, was returned and needed to be replaced to prevent cancellation of the insurance policies. ECF No. 97-3 at 35.

On August 10, 2023, Agile sent 4 Beauty a confirmation of partial $183,000.00 payment to 4 Beauty's account. ¶73.

On or about August 14, 2023, 4 Beauty received a notice of intent to cancel from Agile indicating that 4 Beauty's account was past due and that its insurance policies would be cancelled. ¶74.

On August 16, 2023, Agile emailed Dr. Mendieta requesting payment status because 4 Beauty's account was past due for the July 30, 2023 payment and the insurance policies were scheduled to be cancelled on August 21, 2023. ¶75.

On August 17, 2023, Dr. Mendieta responded to Agile's email: "I keep getting this but my understanding is that this has been paid already." ¶76. On August 17,

2023, Agile responded to Dr. Mendieta's email reiterating that 4 Beauty's account was past due for the July 30, 2023 payment and explaining that the loan was for 11 payments of $183,160.17 due the 30th day of each month from June 30, 2023 through April 30, 2024. ¶77.

On August 17, 2023, Mr. Vanegas responded to Agile's email, with Dr. Mendieta copied, requesting a call with Agile. ¶78. On August 21, 2023, Agile emailed Dr. Mendieta and Mr. Vanegas asking when 4 Beauty would make the past due July 30, 2023, payment. ¶79. On August 21, 2023, Dr. Mendieta responded asking how much had been paid toward the loan. ¶80. On August 21 and 22, 2023, Agile responded to Dr. Mendieta, stating that there had been one payment in the amount of $183,000 and the account was past due for the July 30, 2023 payment of $183,160.17. ¶81.

In September 2023, Agile sent a courtesy email to 4 Beauty advising that its account was past due for the July 30 and August 30 payments and that the amount due was $384,826.53. ¶82.

### III.    PARTIES' ARGUMENTS

Agile says the undisputed facts show the June PFA was a valid contract that was breached and that caused damages to Agile. ECF No. 100 at 3-5. Agile further says that the undisputed facts show 4 Beauty cannot prevail on its remaining affirmative defenses. *Id.* at 5-14.

4 Beauty says the June PFA never became a binding contract for four reasons. First, it was a quote that was never funded. ECF No. 109 at 2, 12-15. Second, there

was no consideration. ECF No. 109 at 3-4, 12-14. Third, it was never accepted in writing by Agile. ECF No. 109 at 4-5, 14-16. Fourth, only Dr. Mendieta had authority to bind 4 Beauty. ECF No. 109 at 5. 4 Beauty also says Agile is precluded from arguing a contract modification theory because that theory was not pled in the Complaint.

## IV.   DISCUSSION

A breach of contract under Florida law requires (1) an enforceable contract, (2) a material breach, (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *see Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). The only element of Count I at issue here is whether the June PFA is an enforceable contract. It is not disputed that 4 Beauty made no payments under the June PFA and that Agile suffered damages when it disbursed funds that have not been repaid.

### A. *"Entered Into"*

In both its Motion and its Reply, Agile says 4 Beauty is bound by its response to Request for Admission 3 and by the joint statement of undisputed facts, in both of which it admitted that it "entered into" the June PFA. ECF Nos. 100 at 3 (citing ECF No. 135-1 ¶24, which cites ECF No. 97-2 at 130); 129 at 4 (same). 4 Beauty did not directly respond to this argument. This admission is ambiguous as to whether 4 Beauty admits only to signing the June PFA (which is undisputed) or whether 4 Beauty is admitting that an enforceable contract was created (which is disputed).

At this stage, I must view this evidence in the light most favorable to 4 Beauty, so I cannot conclude that 4 Beauty concedes that an enforceable contract exists.

### B. Loan Modification Theory

4 Beauty says Agile cannot rely on a theory that the June PFA is a modification of the April PFA because that theory is not pled in the Complaint. ECF No. 109 at 6-9; ECF No. 128 at 2-3. I disagree. A party is required to plead its legal claim for relief; it is not required to plead the theory by which it will prove that claim.

The Federal Rules of Civil Procedure requires only that a complaint be a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard is satisfied if the complaint states a plausible basis for relief based on facts entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 696-97 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512 (2002) (citation omitted). 4 Beauty cites no authority requiring the complaint to allege a specific legal theory.

Here, Count I alleges that the June PFA is a valid, enforceable contract, that 4 Beauty materially breached by not making payments as required, and that Agile has lost money as a result. That is enough.

12

4 Beauty, not Agile, caused the loan modification issue to be raised. In its Answer, 4 Beauty asserted the affirmative defense that there was no consideration for the June PFA. In response, one of Agile's theories of consideration is that the June PFA modified the earlier April PFA.

Agile is not precluded from arguing its loan modification theory.

*C. Lack of Written Acceptance*

4 Beauty says the June PFA is not enforceable because Agile never accepted it in writing. ECF No. 109 at 4-5, 15-16. Florida applies the "mirror image" rule for contract acceptance. "There must be an objective manifestation by both parties of assent to the same terms." *Suarez Trucking FL Corp. v. Souders*, 350 So. 3d 38, 42 (Fla. 2022). "Accordingly, once an offeror makes a proposal that complies with the statute and the rule, 'an acceptance of an offer must be absolute and unconditional, identical with the terms of the offer.'" *Pena v. Fox,* 198 So. 3d 61, 63 (Fla. 2d DCA 2015) (quoting *Ribich v. Evergreen Sales & Serv., Inc.,* 784 So. 2d 1201, 1202 (Fla. 2d DCA 2001)). The acceptance need not use the same words as the offer, but it must be "a positive and unqualified assent" to the terms being proposed. *Suarez,* 350 So.2d at 43. The parties must have "'said the same thing' with respect to the essential elements." *Rich v. Wexler,* 97 So. 3d 912, 914 (Fla. 4th DCA 2012) (footnote and citation omitted).

Agile says any of the following acts satisfy the requirement that it accept the June PFA "in writing:"

- Sending written confirmation that the loan was funded

- Sending written default notices and demand letters

- Sending a written notice of cancellation

ECF No. 111 at 12; ECF No. 129 at 6. Because there are no disputed facts about what Agile said to 4 Beauty, it is a question of law for the Court to decide whether a contract was formed. *See* Fed. R. Civ. P. 56(a).

1. Confirmation of Funds

The loan funding confirmation was not an acceptance of the June PFA. That confirmation was sent on May 2, 2023, a few days after the April PFA was executed and before 4 Beauty defaulted on that PFA. Logically, Agile could not have accepted the June PFA before the June PFA was proffered. There is no evidence in the record that June PFA was proposed before May 2.

2. Default Notices and Similar Communications

Beginning with an email on May 26, 2023, Agile had a series of communications with 4 Beauty about the status of 4 Beauty's account.

Agile's May 26 email said, in total:

> The above referenced account is past due for the 5/9/23 payment and the insurance policies are scheduled to cancel on 5/31/23 for nonpayment. Can you tell me when this payment was issued or if it hasn't been when it will be.

ECF No. 97-3 at 3. On July 3, 2023, after 4 Beauty did not make its first payment under the June PFA, Agile sent a past due notice that read:

> This is a courtesy notice to let you know that we have not received your payment that was due on 06/30/2023. You can make your payment online at www.agile-pf.com, call us at 619-391-1851, or we must receive

> your payment by 07/05/2023 to avoid a late charge of $9,158.01. Your current balance due is $183,160.17.

ECF No. 99-1 at 5. On July 10, 2023, Agile sent 4 Beauty a Notice of Intent to Cancel which said:

> Our records indicate that this account is now past due. If we do not receive payment within 10 days of the date of this notice, we will request cancellation of this policy(s) to be effective on 7/20/2023 at 12:01 a.m. standard time."

ECF No. 99-1 at 7.

On July 27, 2023, Agile notified Dr. Mendieta that, "The payment made on 7/20/23 for the above referenced account was returned NSF, the payment needs to be replaced today to prevent cancellation from being issued on your insurance policies." ECF No. 97-3 at 35.

On August 10, 4 Beauty made a payment of $183,000 to Agile. ECF No. 97-3 at 37, 40. That same day, Agile sent a notice of Partial Payment, saying, "Our records indicate that the payment we received today was not the amount due. We have accepted your payment and updated your next due date. Please make your next payment in the amount of $366,495.51 before 7/20/2023 so that your account will be current." *Id*. at 40.

The next day, August 11, 2023, Agile sent 4 Beauty an Intent to Cancel. ECF No. 97-3 at 39. It said:

> Our records indicate that this account is now past due. If we do not receive payment within 10 days of the date of this notice, we will request cancellation of this policy(s) to be effective on 8/21/2023 at 12:01 a.m. standard time."

*Id*. On August 16, 2023, Agile emailed Dr. Mendieta, saying, "The above referenced account is past due for the 7/30/23 payment and the insurance policies are scheduled to cancel on 8/21/23 for nonpayment. Can you tell me when this payment was issued or if it hasn't been when it will be." ECF No. 96-1 at 510.

Dr. Mendieta responded, "I keep getting this but my understanding is that this has been paid already. Please clarify." *Id*.

Agile responded the next day, "You are past due for the 7/30/23 payment, we received a payment on 8/10/23 however that was the 6/30/23 payment. This loan is set up for 11 payments of $183.160.17 due the 30th of each month, 1st due was 6/30/23 final payment due 4/30/24." *Id*. at 509.

On August 21, 2023, Agile had a series of emails with Dr. Mendieta:

Agile:  "When do you expect to be able to make the 7/30/23 payment on this account?"

Dr. Mendieta: "[H]ow much have we paid so far to this date?"

Agile:  "You have paid a total of $183,000 to Agile (6/30/23 payment)."

Dr. Mendieta: "I meant from the very beginning? TOTAL PAID."

Agile:  "You were to pay a down payment of $100,973.90 to CaptiveOne Services LLC however I cannot confirm if you have paid it to them you would need to get the answer from them. I can only confirm what you paid to Agile."

Dr. Mendieta: "I'm SO confused please explain my payments to both companies.

1. You are saying I paid 100K to captive one
2. So what are you guys? How much have I already paid you guys?

*Id*. at 508-509. The next day, August 22, 2023, at 8:02 a.m., Agile responded:

16

1. Based on the finance agreement you signed (see attached) a down payment was due to Captive for $100,973.90. I don't know if you paid it since CaptiveOne and Agile Premium Finance are 2 different companies.

2. Agile is a premium finance company you have made 1 payment of $183,000 and are currently past due for the 7/30/23 payment of $183,160.17.

*Id.* The mail from identified "4 Beauty Aesthetic Institute Signed PFA 3510579 re-write of acct #xxx-238.pdf" as an attachment. *Id.*

This August 22, 2023, email was the first written communication from Agile that specifically referenced the June PFA and mirrored its terms.

On October 27, 2023, Agile sent a Notice of Default, Acceleration, and Demand for Payment. This writing specifically referenced the June PFA and asserted that 4 Beauty had violated the terms of the PFA, and, among other things, said that Agile had the right to enforce the PFA. ECF No. 1-11 at 2-4.

On November 10, 2023, counsel for Agile sent a Notice of Default and Demand for Payment to 4 Beauty. Attached was a copy of the June PFA. Agile said it was acting to assert its rights under the PFA, "and all other agreements and documents referred to or at any time executed and/or delivered in connection with the [PFA]." ECF No. 1-11 at 5.

As this chronology shows, Agile accepted the June PFA in writing, but no earlier than August 22, 2023. It is not necessary to pinpoint the precise date, however. As next discussed, the June PFA is enforceable based on the parties' conduct.

17

### 3.   Acceptance by Conduct

Agile's summary judgment response argues in the alternative that the conduct of the parties makes the June PFA an enforceable contract even if it was not accepted in writing. 4 Beauty did not reply to this argument, *see* ECF No. 128, so it is conceded. *Jones v. Bank of Am., N.A.,* 564 F. App'x 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.") (internal citation omitted) (bracket in original).

On the merits, Agile is correct. Agile cites two cases supporting its position. The first case is *Bush v. Ayer.* 728 So.2d 799 (Fla. 4th DCA 1999) (involving the sale of real estate). In this case, the seller's offer required the buyer to sign the original hard copy of the sale contract. *Id.* at 800. The buyer signed a facsimile copy. *See id.* at 800-01. The seller had closing documents prepared, but at the last minute refused to close because the terms of the contract had not been satisfied. *Id.* at 801-02, Only after the buyer threatened litigation did the seller claim that no contract existed because only a facsimile had been signed. *Id.* at 802.

The Florida appellate court recognized that a contracting party can impliedly waive strict compliance with the contract's terms. *Id.* at 801. "A waiver may be express or implied, and may be inferred from conduct or acts that warrant the inference that a known right has been relinquished." *Id.* It also said waiver is generally a question of fact, but that a finding of waiver based on undisputed evidence would be reviewed as a legal conclusion." *Id.* (citations omitted).

18

On the facts presented, the *Bush* court held the seller had waived his right to object to the manner of acceptance. It noted that the seller "did not simply fail to assert to the contrary – they actively conducted themselves in a manner that left no room reasonable inference to the contrary. *Id.* at 802. It would be difficult to imagine a much stronger showing of waiver by conduct than made in this record." *Id.* at 802.

Agile also cites *Sundial Partners, Inc. v. Atlantic Street Capital Mgmt.,* No. 15-cv-861-T-23, 2016 WL 943981 (M.D. Fla. Jan. 8, 2016) *report and recommendation adopted,* No. 8:15-CV-861-T-23JSS, 2016 WL 931135 (M.D. Fla. Mar. 11, 2016). There, the parties disputed whether they were bound by an arbitration provision in an unexecuted agreement. *Id.* at *4. The agreement said it became valid and binding "when executed by" the party. *Id.* at *5. Then-Magistrate Judge Sneed said:

> Under Florida law, the acceptance of an offer, to result in a contract, must be in the mode, at the place, and within the time expressly or impliedly required by the offer. *Kendel v. Pontious,* 261 So.2d 167, 169 (Fla. 1972). However, "a valid contract is formed, notwithstanding a deviation from the offeror's designated mode of acceptance, if there was a meeting of the minds and the offer was indeed accepted." *Yellow Pages Photos, Inc. v. Ziplocal, LP,* 795 F.3d 1255, 1270–71 (11th Cir. 2015). Therefore, the fact that the Finder Agreement specifies a method of acceptance is not dispositive of whether Plaintiff accepted the arbitration agreement.

*Id.* at *5. She further explained, "The parties may be bound by the provisions of [the agreement] if the evidence supports that they acted as if the provisions of the contract were in force — for example, by performance. *Id.* (collecting cases). *Id.* She concluded, "Here, Plaintiff manifested assent to arbitration, as the evidence supports that Plaintiff acted as if the provisions of the contract were in force." *Id.*

Even viewing the evidence in the light most favorable to 4 Beauty, the undisputed facts show that the June PFA is enforceable even if Agile never accepted it in writing. Like the seller in *Bush,* 4 Beauty's behavior was consistent with someone who understood that the June PFA was in effect and binding. 4 Beauty never questioned why Agile had sent it money or why Agile was demanding payments; it made one payment toward the balance owed and sent a second payment that was rejected for insufficient funds; it never offered to return the funds. Moreover, in its internal discussions, 4 Beauty tried to take steps to comply with the terms of the June PFA. In a series of emails on July 3, Mr. Vanegas and Dr. Mendieta discussed taking steps to comply, including having Mr. Jenkins "float" the first payment.

For all these reasons, I reject 4 Beauty's argument that the June PFA is not enforceable because Agile never accepted it in writing.[3]

---

[3] Agile also says 4 Beauty waived this argument because 4 Beauty did not assert lack of written acceptance as an affirmative defense. ECF No. 111 at 12. Lack of acceptance is a denial that challenges whether Agile can prove a contract exists, it is not an affirmative defense that admits a contract exists but nevertheless seeking to avoid liability. *Compare, e.g., In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ( A defense that points out a defect in the plaintiff's ability to prove a *prima facie* case is a denial) *with ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, No. 20-20569-CIV, 2021 WL 4973579, at *2 (S.D. Fla. June 29, 2021) (citations omitted) ("An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter."). For that reason, 4 Beauty was not required to plead this argument in its Answer.

*D. Consideration*

In its Motion, and in its Response to Agile's Motion, 4 Beauty says there was no consideration for the June PFA because 4 Beauty never received any funds under the June PFA, nor did it receive any insurance policies. ECF No. 102 ¶¶ 70, 73; ECF No. 109 at 13-14. Agile responds that agreeing to modify the terms of the April PFA loan was sufficient consideration. ECF No. 111 at 15-17; ECF No. 129 at 8-10. It also says the June CFA was separate consideration. ECF No. 111 at 17; ECF No. 129 at 9. 4 Beauty's Reply does not address these arguments. ECF No. 128.

"It is well settled Florida law that forbearance from pursuing a legal remedy, where the promisee has a bona fide belief that a viable legal right exists, constitutes valid consideration for an agreement which benefits the promisor." *Citibank Int'l v. Mercogliano,* 574 So. 2d 1190, 1191 (Fla. 3d DCA. 1991).

Here, on June 12, 2023, the date of the June PFA, 4 Beauty was in default on the April PFA and owed Agile approximately $2,000,000. Under the April PFA, Agile had the legal right to enforce that default and to make 4 Beauty "pay all applicable cancellation charges, interest charges, collection costs, and expenses incurred by Agile Premium Finance as a result of or in connection with enforcing its rights under [the April PFA]." ECF No. 97-3 at 167. And, under the February CFA, Agile had the right to cancel the existing insurance contracts and to recover its collections costs and attorneys' fees. ECF No. 97-3 at 160.

The June PFA changed the repayment terms, to the benefit of 4 Beauty. Instead of five monthly payments of $411,072.86, Agile agreed to accept eleven

21

monthly payments of $183,160.17. 4 Beauty promised to provide new insurance policies that would be financed by the existing loan. Agile agreed to substitute those policies and also did not exercise the other rights it had under the April PFA and February CFA resulting from 4 Beauty's default. Both parties agreed to do something that benefited the other and that they were not already required to do. That is enough for contractual consideration to exist. *See, e.g., Koung v. Giordano,* 346 So.3d 108, 115-16 (Fla. 1st DCA 2022).

### E.  Remaining Arguments

4 Beauty argues that the June PFA is not an enforceable contract because Agile never accepted the June CFA. ECF No. 109 at 2, 14-15. It is irrelevant to the enforceability of the June PFA whether the June CFA was properly executed. Count I of the Complaint alleges a breach of the June PFA. The June PFA is a free-standing, independent agreement that is not contingent on the June CFA. Executing the June PFA was a pre-condition for the June CFA, but not vice versa. So, even if the June CFA was never finalized, the June PFA is enforceable.

4 Beauty also says that the June PFA is not enforceable because Agile did not satisfy the "Promise to Pay" term. ECF No. 109 at 14-15. That term says in relevant part, "In return for the payment(s) that Agile Premium Finance has advanced to pay my insurance policy or policies listed in this agreement, I promise to make monthly payments as shown in this agreement." ECF No. 1-6 at 2. 4 Beauty says, "No payment was made to any insurance company on 4 Beauty's behalf, and no insurance policy

22

was issued to 4 Beauty, thus, 4 Beauty has no repayment obligation to the Plaintiff per the [June] PFA." ECF No. 109 at 15.

4 Beauty misinterprets this term and the undisputed facts refute this argument. The "Promise to Pay" term said that Agile would advance funds "to pay [for]" 4 Beauty's insurance policies. It did not say that Agile would directly pay the insurer. Agile complied with this obligation. It disbursed funds on May 2 to CaptiveOne, 4 Beauty's designated agent and captive insurance manager, with the understanding that the funds would be used to pay insurance premiums for the policies then in effect. Thereafter, 4 Beauty told Agile it was going to get different insurance policies. Agile did not ask for its money back. Instead, the parties executed the June PFA which allowed 4 Beauty to use the same funds to finance the new insurance policies. Agile did not disburse any additional funds as part of the June PFA. In short, Agile did what it promised — it advanced money for the purpose of paying for 4 Beauty's insurance. The fact that no insurance ultimately was acquired because the captive manager stole the money does not make the June PFA unenforceable.

Finally, 4 Beauty points to a June 14, 2023, email that says Agile's President gave instructions to put the funding on hold. ECF No. 109-2 at 2. 4 Beauty does not explain why this facts affects whether the June PFA is an enforceable contract.[4]

---

[4] 4 Beauty's Response also argues that Mr. Vanegas was not authorized to sign the June PFA for 4 Beauty. This argument is irrelevant. The June PFA bears Dr. Mendieta's signature. 4 Beauty has not cited evidence in the record that he did not

## V.   AFFIRMATIVE DEFENSES

4 Beauty's Answer asserts 16 so-called affirmative defenses. Agile's Motion says that only eleven of those asserted defenses could apply to Count I. ECF No. 100 n.2. The applicable defenses are:

- Failure to state a claim upon which relief can be granted (First Affirmative Defense);

- Failure to comply with a condition precedent (Second Affirmative Defense);

- Lack of privity because no one with authority to bind 4 Beauty signed the PFA (Third Affirmative Defense);

- No agent with authority to bind the principal signed the PFA (Fourth Affirmative Defense);

- No agent had authority to make representations on behalf of 4 Beauty (Fifth Affirmative Defense);

- Acts of third parties were intervening or superseding causes of Agile's damages (Sixth Affirmative Defense);

- Lack of consideration because funds were not paid to finance insurance premiums (Seventh Affirmative Defense);

- Waiver, laches, unclean hands, and estoppel  (Eighth Affirmative Defense);

- Agile did not mitigate its damages (Twelfth Affirmative Defense);

- Set-off (Thirteenth Affirmative Defense); and

---

sign it or authorize his name to be affixed to it.

24

- Lack of standing to pursue the claims in the complaint (Fourteenth Affirmative Defense).

4 Beauty only responded to the arguments that (1) no consideration existed, (2) Agile never accepted the PFA in writing, (3) no one with authority signed the PFA for 4 Beauty, and (4) no payment was made for an insurance policy. ECF No. 109 at 12-16. The defenses to which 4 Beauty responded are not affirmative defenses for which 4 Beauty bears the burden of proof; rather, they are denials asserting different theories of why Agile cannot meet its burden of proving a breach of contract. For the reasons discussed above, Agile has met that burden.

## VI.   MOTION TO STRIKE

4 Beauty separately moves to strike one paragraph from the Declaration of Robert Przespolewski. ECF No. 119. In paragraph 12, Mr. Przespolewski says, "As a result, Plaintiff cancelled 4 Beauty's insurance policy on September 6, 2023." ECF No. 99-1 ¶12. I did not consider that paragraph in evaluating the parties' cross-motions for summary judgment. It is therefore recommended that the Motion to Strike be DENIED AS MOOT.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court GRANT Agile's Motion for Summary Judgment [ECF No. 100], DENY 4 Beauty's Motion for Summary Judgment [ECF No. 102], and DENY 4 Beauty's Motion to Strike [ECF No. 119].

25

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable David S. Leibowitz, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 6th day of April 2026.

_____

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE